58 CCPA

## Application of Peter ANDREWS

### (3 cases).

### Patent Appeal Nos. 8386, 8387 and 8399.

United States Court of Customs
and Patent Appeals.

Jan. 14, 1971.

Peter Andrews, pro se.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

These are three appeals from decisions of the Patent Office Board of Appeals affirming the examiner's rejection of most of the claims in three related applications as either anticipated by or obvious in view of the prior art and of one claim as additionally "inaccurate" under 35 U.S.C. § 112. While not formally consolidated, we consider all three cases in one opinion because, in view of the close relationship of subject matter, it will be more efficient to do so.

In No. 8386, claims 1, 2, 4–6, 8–11, 13–15, 17, 19, 21, 25, 27–29, and 31 of appellant's application serial No. 532,831, filed February 21, 1966, are on appeal. In No. 8387, claims 31, 33–36, 50, 51, 53–55, 58, 59, and 62–64 of appellant's application serial No. 508,624, filed October 21, 1965, are on appeal. In No. 8399, claims 1–23 of appellant's application serial No. 530,-

217, filed February 25, 1966, are on appeal. In both Nos. 8386 and 8387 several claims stand allowed;[1] no claims have been allowed in No. 8399. We affirm in part and reverse in part.

## THE INVENTIONS

All three of appellant's applications claim receptacles for attachment to the underside of the engine of a motor vehicle so as to catch fluid drips. A general idea of the inventions claimed in all three may be had from Fig. 36 in No. 8386:

[A3522]

In No. 8386 all claims recite that the receptacle has "a separate material retained inside for said fluid," or words to that effect, and claims 1, 2, 4–6, 8–11, 13–15, 17, 19, 21, and 29 recite that the walls of the receptacle have "their entire upper ends and corners formed integrally inwardly for forming a surrounding integral bezel-like flange," or words to that effect. By "bezel-like flange" appellant means a rim extending inwardly from the tops of the walls of the receptacle, which rim, appellant's brief informs us, is

\* \* \* for "KEEPING DRIPPED IN OIL OR FLUID IN THE RECEPTACLE" under all motor vehicle conditions and positions, and specifically when a motor vehicle on the highway or a boat in the water is abruptly started, stopped, curving or is at a steep out of level angle.

Additionally, claim 5 recites that "at least one portion of the *inner* bottom wall of said receptacle \* \* \* [has] an adhesive means thereon for adhesively bond-

---

1. Certain of the claims found "allowable" below were simultaneously "objected to" for matters of form not before us.

ing said material to said bottom wall" (emphasis ours), and claim 13 recites that "at least one portion of the *outer* bottom wall of said receptable [sic] has an adhesive means bonded thereon for adhesively bonding said receptable [sic] to the surface of *a* material" (emphasis ours). Apart from these distinctions, the twenty claims on appeal differ by reason of the "separate material" specified or described.

In No. 8387 claims 35, 36, 50, 51, 53–55, 58, 59, 62, and 64 depend from claim 31, and all twelve claims accordingly specify that the receptacle is removably spaced beneath "the lowest underside outer surface of at least one oil pan of said vehicle" to permit air circulation "for indirectly cooling the lubricating oil in said oil pan and for increasing the rate of oxidation and thickening of said fluid retained in said material and in said receptable [sic]." Additionally, all twelve recite that the receptacle is to be secured to the motor vehicle by means of "accessible bolt securing means," by which appellant intends dual utilization of the bolt holes in the vehicle's frame. Claims 54 and 55 recite means for removably securing the material within the receptacle. Claim 58 recites adhesive bonding of the material to the inside of the receptacle. Claim 62 recites that the material is retained in a "separate receptacle," which is retained in turn in the principal receptacle. Claim 51 recites "a surroundingly integral bezel-like flange," and claim 59 recites "at least one partial [sic] bezeled member * * sealingly capped onto the top edge of at least one end and partially on each side wall portions of said receptacle," but the other claims in this group do not require the "bezelling" typical of the first application. Claims 35 and 36 specify the material to be retained in the receptacle. Claims 50, 53, and 64 elaborate upon the hanger means of claim 31.

Of the remaining three claims in No. 8387, both claim 33 and claim 34 recite that the uppermost portions of the walls of the receptacle "surroundingly merge integrally into an integral bezel-like inwardly formed flange" and that the receptacle is attached to the motor vehicle by "integral and upstanding hanger means" generally similar to those recited in the group of claims from this application first described, but both omit the air circulation feature. These two claims also recite that the receptacle is to be secured to the motor vehicle by means of "accessible bolt securing means." Claim 34, which depends from claim 33, recites that "the integral lower end of said hanger means is removably secured to at least one portion of said receptacle by at least one bolt and nut securing means."

The remaining claim in No. 8387, claim 63, depends from claim 39, which was allowed below and which is not in the record before us. It recites a "combination according to claim 39 wherein said hanger openings are substantially keyhole shaped * * *."

In No. 8399, claims 2–17 depend from independent claim 1, and claims 19–23 depend from independent claim 18. All claims are for "a one piece receptacle device" sans the oil-absorbent materials recited in the claims in the other two cases. Claims 1–17 recite one or more "hangers" of various configurations by which the receptacle is disposed "in substantially piggyback relation beneath" various portions of the motor vehicle. Claim 11 specifies that the receptacle be made from "CR–MO–W steel material." Claims 18 through 23 do not recite hangers by name, but do specify that "at least one portion of said device's inside bottom wall portion is in spaced relationship to the lowest underside portion of an oil pan of said vehicle." These claims differ among themselves in the means specified for permitting the receptacle to be "removably secured" to the vehicle.

## THE REFERENCES

The references relied upon below were:

| Beskid | 2,783,848 | Mar. 5, 1957 |
| Oganovic | 3,062,323 | Nov. 6, 1962 |
| Inglese | 2,931,453 | April 5, 1960 |

Beskid discloses an "Oil Drip Catcher for Automotive Vehicles" depicted in the following drawings:

FIG. 1

FIG. 2

FIG. 3

[A3523]

---

Fig. 1 is a side view showing a drip catcher attached to an automobile; Fig. 2 is a side view in central vertical section; and Fig. 3 is an end view in partial vertical section. Element 18 is a removable "sheet of absorbent material," which "may be formed of any suitable substance capable of absorbing oil and grease, as for example porous paperboard." It is held in place by "inwardly extending flange[s] 34," the end walls, 20 and 24, and the sidewalls 22 of the container 16, which "is of integral construction." The "downwardly dished bottom wall 26 * * * affords considerable rigidity to the container 16 and also lends itself to economical construction." This downward dishing of the bottom wall serves the additional function of creating a "reservoir" beneath the absorbing sheet into which oil and grease may drop if the absorbent sheet becomes saturated

before it is replaced. The operative portion of the drip catcher is retained "against the underside of the engine E with considerable force" by two pairs of tension springs, 44 and 45, and clamps 48 and 50 attached to the frame of the automobile. Beskid also discloses that, although the embodiment described in his specification is adapted for use "with a vehicle of the automotive type," his invention "is also well adapted for use with trucks and buses."

Oganovic discloses a "Pad or Mat for Garages or the Like," the principal object of the invention being "to provide an oil absorbing pad for garages and the like places adapted to be located under the vehicle and which will upon oil dripping thereon absorb the oil so that it will not get upon the floor surface or cement." In the following drawings, Fig. 1 is a perspective view of the top of the pad and Fig. 2 is a section on line 2–2 of Fig. 1:

FIG. 2.

[A3524]

FIG. 1.

[A3650]

Element 10 is "a board of insulating material such as [is] used in the building industry and having substantial thickness." It is suggested that the insulating board be "made of crushed wood fibers that are pressed together with a suitable binding agent to form a rather tough sheet of building material." Element 14 is "a glue or cement to provide a coating" over the insulating board, and 15 is "an oil absorbing chemical * * * known in the trade as Dryite or Dryrite," which chemical is "disposed" or "spread" on the glue. A metal or synthetic rubber band 11 surrounds the insulating board. "This band surrounds the edge [of the insulating board] and has top and bottom flanges 12 and 13 tightly gripping the top and bottom faces of the insulating board 10 to prevent the same from being saturated with oil from the end or edges of the board." One of the functions of the insulating board itself is that it "will have absorbed all of the oil which passes through the [oil absorbing] chemical."

Inglese discloses an "Oil Drip Pan for Motor Vehicles" as depicted in side elevation in Fig. 1 of his specification and in perspective in Fig. 3:

FIG. 1

[A3525]

FIG. 3

[A3526]

Inglese is cumulative to Beskid in most respects, but was added to show an oil drip receptacle in spaced relationship to the underside of the motor vehicle. This spaced relationship is provided by the spacer brackets 41 where the receptacle is bolted to the clutch housing 15 in conjunction with the direct bolting of the re-

ceptacle to the cross member 30 of the frame of the motor vehicle in front and to the cross members 37 of the frame of the motor vehicle in the rear.

### THE REJECTIONS

In No. 8386, the examiner relied on 35 U.S.C. § 103 to reject claims 1, 2, 4–6, 8–15, 17, 19, 21–24, and 29 as unpatentable over Beskid in view of Oganovic and claims 27, 28, and 31 as unpatentable over Beskid. Claim 25 he rejected under 35 U.S.C. § 102 as fully met by Beskid. The board reversed the examiner's rejections of claims 12, 23, and 24 but affirmed the other rejections on the examiner's grounds. It found that Beskid "provides or makes obvious the use of a container * * * having upstanding sides and closed corners" to reduce oil contamination of the highways. In the board's view, the one feature of appellant's invention (as claimed in claims 1, 2, 4–6, 8–11, 13–15, 17, 19, 21, and 29) not disclosed by Beskid is appellant's "bezel-like flanges," and the board took judicial notice of the "notoriously old" use of "Containers with flanged periphery for the control of fluid contents," citing Oganovic as an illustration of such a container. The use of adhesive backing to bond the absorbent material to the receptacle the board held to be "no more than an obvious use of old expedients * * *." Finally, it dismissed the various absorbent materials recited in claims 4, 8–11, 14, 15, 17, 19, 21, 22, and 27 as "so varied as to indicate little more than absorbency as the common desired factor." Since Beskid called for "absorbent material" in his oil drip catcher, and since appellant alleged no unobvious result deriving from the use of any of his specified "separate materials," the board held all these claims obvious in view of Beskid and Oganovic or Beskid alone.

In No. 8387, the examiner rejected claims 31, 35, 36, 50, 53–55, 57, 58, and 60–64 as obvious in view of Beskid and Inglese and claims 33, 34, 51, and 59 as obvious in view of Beskid, Inglese, and Oganovic. The examiner further rejected claim 34 as "inaccurate" on the ground that "an integral hanger means can[not] also be a removable hanger means." The three Rule 132 "affidavits" [2] filed in support of appellant's application the examiner disregarded on a ground which will be discussed later. The board reversed the examiner's rejection of claims 57, 60, and 61 but affirmed the other rejections on the grounds stated by the examiner. In particular, it dismissed appellant's "hanger means" as not patentably different from Inglese's spacers and appellant's use of "accessible bolt securing means" as "well known" in the "attachment art." The board's opinion does not mention the three "affidavits."

In No. 8399, the examiner rejected claims 1–17 as obvious in view of Beskid and Inglese and claims 18–23 as obvious in view of Beskid. He dismissed three Rule 132 "affidavits" on the same ground as that used to dismiss the "affidavits" filed in No. 8387, and he dismissed the fabrication of the receptacle from CR–MO–W steel, as called for by claim 11, as "a choice of materials obvious to a person skilled in the art." The board affirmed all the examiner's rejections on the examiner's grounds. Its opinion states that it "considered the affidavits of record, but * * * [did not find] them significant on the issues of obviousness." It made no mention of the use of CR–MO–W steel in particular, stating only that it agreed with the examiner that claims 2 through 17 "set forth, in addition to the substance of claim 1, only obvious matters."

2. We place the word "affidavits" in quotation marks because the copies in the record of the documents filed in this appeal and in No. 8399 and treated as Rule 132 affidavits do not bear evidence either of having been sworn to or of having been subscribed to in the alternative manner authorized by 35 U.S.C. 25 and Patent Office Rule 132. However, the Patent Office has not argued this point, and it is made unimportant by our view of the significance of the contents of these "affidavits."

## OPINION

We have considered the lengthy records and appellant's briefs and reply briefs in these cases, as well as the numerous errors assigned, and we find it necessary to comment on only three of the rejected claims. We affirm the rejection of the remainder of the claims under either 35 U.S.C. §§ 102 or 103 for the reasons stated by the board, although we disapprove of the way in which appellant's Rule 132 "affidavits" were disposed of below. Affirming the rejection of claim 34 of application serial No. 508,624 as obvious in view of Beskid, Inglese, and Oganovic, we do not find it necessary to comment on its additional rejection under 35 U.S.C. § 112. The three rejections which we will discuss separately are of claim 13 in application serial No. 532,831 (which we reverse), claim 63 in 508,624 (which we affirm), and claim 11 in 530,217 (which we reverse).

■ Claim 13 of application serial No. 532,831 is a dependent claim. Claim 1, from which it depends, recites a "fluid drip catcher receptacle device for a motor vehicle" having walls which are "formed integrally inwardly for forming a surrounding integral bezel-like flange" and having "a separate material retained inside for said fluid." Claim 13 reads in its entirety:

13. A combination as set forth in claim 1 wherein at least one portion of the *outer* bottom wall of said receptable [sic] has an adhesive means bonded thereon for adhesively bonding said receptable [sic] to the surface of *a* material. [Emphasis ours.]

While we agree with the board that claim 5, which calls for "adhesive means" for "adhesively bonding said material" (that is, the "separate material retained inside for said fluid") to "the *inner* bottom

wall of said receptacle" (emphasis ours), is obvious in view of Beskid and Oganovic, we cannot agree that a fluid drip catcher receptacle in which a fluid absorbing material [3] is adhesively bonded to the *outer* bottom wall of the receptacle is in any way suggested by the prior art. Since this claim has been rejected only as being obvious in view of the prior art, we reverse.

■ Claim 63 of application serial No. 508,624 is also a dependent claim, depending from claim 39 which has been allowed. Claim 39 is not in the record. We affirm the rejection of claim 63, not on the obviousness ground (which we are not in a position to evaluate), but on the ground that appellant failed to comply with Rule 26(3) of this court, which reads in relevant part:

If any claims of the applicant shall have been allowed, *and a consideration of the same shall be involved in the issues presented on appeal*, a * * * copy of said allowed claim shall immediately follow the rejected claims [in the printed record], under the heading Allowed Claims. [Our emphasis. ]

Since the obligation of an appellant in this court is to present a record from which we can determine whether the rejection below was correct, and since appellant has failed to do so, we affirm the rejection of claim 63. Cf. Sleepmaster Products Co. v. American Auto-Felt Corp., 241 F.2d 738, 739, 44 CCPA 784, 785–786 (1957) (Patent Office affirmed where record did not include documentary exhibits on which the decision below had been based).

■ Claim 11 of application serial No. 530,217 depends from claim 1, which recites, inter alia, a "one piece receptacle device" in "spaced relation beneath at

3. We are reading the words "a material" at the end of claim 13 as if they read "said material," because that is the only way we can make any sense at all out of the claim. Also, we are ignoring the obvious inconsistency between the requirement in claim 1 that the material be "re- tained inside" the receptacle and the requirement in claim 13, dependent from claim 1, that the material be adhesively bonded to the outside of the receptacle, because this claim was not rejected on that ground.

least one underside portion of said vehicle." Claim 11 reads:

> 11. The device according to claim 1 wherein it is made from CR–MO–W steel material.

Appellant's reason for using CR–MO–W steel, according to his specification, is that it is an "inorganic catalyst," and its use as the material from which the receptacle is made increases "the rate of oxidation and thickening of the retained fluid," which reduces air pollution and increases the time between servicings of the oil drip catcher. The Patent Office has not questioned this assertion nor has it produced any evidence that it was known in the art that the use of CR–MO–W steel in fabricating oil drip catchers would increase their efficiency. We cannot take judicial notice of either the impossibility of what appellant asserts or that what he asserts was known in the prior art. Accordingly, we reverse the rejection which, in our view, ignored the thrust of appellant's application in this regard.

█ There remains as a final point the Patent Office's treatment of the Rule 132 "affidavits" filed by Mr. Andrews in No. 8387 and No. 8399. In each case the examiner dismissed them as *not complying* with Rule 132 because they:

> \* \* \* merely set forth conclusions as to the alleged differences between the claimed structure and the references rather than actual results of comparative tests between the claimed structure and structure identical with the references \* \* \*

citing section 716 of the Manual of Patent Examining Procedure. The board did not mention the "affidavits" in its opinion in No. 8387; in No. 8399, the board mentioned them, but its cursory comment does not make clear why it had found them "[not] significant on the issues of obviousness."

The "affidavits" in the two cases are by the same three people, and each person's two "affidavits" are substantively identical. Additionally, the assertions contained in each person's "affidavits" are quite similar. Each states that the affiant has "read and seen" both a large number of references (including Beskid, Oganovic, and Inglese) and appellant's application, that the affiant has had lengthy experience with motor vehicles (including in the cases of two of the affiants that they had "installed and removed \* \* \* underpans from previous motor vehicles," or words to that effect), which experience was as an automobile mechanic, a shop foreman in a garage, or the like, and that it was the affiant's opinion that appellant's invention was not obvious in view of the prior art with which they had been asked to compare it because appellant's invention was simpler, safer, more efficient, etc., and because neither they nor anybody else they knew had thought of it before appellant did although there was great need for such simpler, safer, more efficient drip pans.

We cannot agree with the examiner and the board that these "affidavits" (except for their execution) do not comply with Rule 132. However, having read them, we think refusal to accept them as establishing non-obviousness of appellant's inventions was justified in view of the limited credentials of the affiants and the substance of what the "affidavits" say.

## SUMMARY

In No. 8386, we affirm the rejection of claims 1, 2, 4–6, 8–11, 14, 15, 17, 19, 21, 25, 27–29, and 31 in application serial No. 532,821 and reverse the rejection of claim 13.

In No. 8387, we affirm the rejection of claims 31, 33–36, 50, 51, 53–55, 58, 59, and 62–64 in application serial No. 508,624.

In No. 8399, we affirm the rejection of claims 1–10 and 12–23 in application serial No. 530,217 and reverse the rejection of claim 11.

Modified.